## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

HOMESTEAD AFFORDABLE HOUSING,
INC.,

       *Plaintiff,*

  vs.

FEDERAL HOME LOAN BANK TOPEKA,

      *Defendant.*

Case No. 5:13-CV-4111-EFM-JPO

## MEMORANDUM AND ORDER

Plaintiff Homestead Affordable Housing, Inc. ("Plaintiff") seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, against Defendant Federal Home Loan Bank Topeka ("Defendant") for violations of 12 C.F.R. § 1291, the regulations governing the federal Affordable Housing Program. This matter is before the Court on Defendant's Motion to Dismiss for lack of subject matter jurisdiction or, in the alternative, failure to state a claim upon which relief can be granted (Doc. 15). For the reasons stated below, Defendant's Motion is denied.

### I.  Factual and Procedural Background

Plaintiff is a not-for-profit organization headquartered in Holton, Kansas, that is engaged in the business of providing affordable housing opportunities. To achieve its objective, Plaintiff seeks funding from a variety of sources, including grant opportunities through the federal government. One such program is the Affordable Housing Program ("AHP"), which was created

by Congress and is one of the largest private sources of subsidies for affordable housing in the United States.  The AHP is administered by the Federal Home Loan Bank ("FHL Bank"), which is regulated by the Federal Housing Finance Authority ("FHFA").  Defendant is a member bank of the FHL Bank.

In 2003, Plaintiff sponsored an application to Defendant for AHP funds to aid in the development of a project known as the Junction City Senior Residences, located in the historic Bartell Hotel in Junction City, Kansas (the "City").  The project became known as the "Bartell Project" and was designed to provide affordable housing to seniors.  Plaintiff originally anticipated receiving a donation of the land site for the Bartell Project from the City and listed this contribution on its 2003 application.  Plaintiff's 2003 AHP application resulted in an award of $160,000 of AHP funds.

After it submitted the 2003 application, Plaintiff was notified that the City would not donate the land for the Bartell Project but instead would donate the funds to Plaintiff to purchase the land.  Plaintiff notified Defendant of this change after notification, but prior to distribution, of the 2003 AHP award.  The City donated $238,000 to Plaintiff to aid in Plaintiff's acquisition of the project site.  Plaintiff thereafter submitted a revision of its 2003 AHP application,  as requested by Defendant, and was subsequently informed by Defendant that the Bartell Project was still eligible for the $160,000 award.

In 2007, Plaintiff worked with Defendant to prepare and submit a second application for AHP funds, seeking an additional $160,000.  In its 2007 application, Plaintiff disclosed that the City had donated funds to Plaintiff to acquire the Bartell Project site.  It also disclosed that the residential portion of the project had been sold to Junction City Senior Residences, LP ("Senior Residences") in 2006 and that Senior Residences had expended $275,000 to acquire title to the

project site.  Plaintiff indicated that its fee associated with the project was $330,000.  Allegedly in consultation with Defendant, Plaintiff did not list in the Bartell Project's "source of funds" the cash donation Plaintiff received from the City.

Defendant thereafter conducted a compliance review of the Bartell Project, which included a complete review of all grant terms, tenant income compliance, services and amenities provided, and compliance with all terms of the AHP commitment.  Plaintiff received a notification of compliance from Defendant and was informed that the Bartell Project was subject to a fifteen-year compliance period to ensure that the AHP award was going toward providing affordable housing.

On June 26, 2013, six years into the fifteen-year compliance period, Plaintiff received an email inquiry from Defendant about the nature of the City's donation to the Bartell Project. Defendant asked Plaintiff to clarify the City's cash donation and to indicate whether the cash donation was used to acquire the project site because the Bartell Project's budget did not reflect the City's donation.  Plaintiff was then summoned to meet with Defendant to discuss the Bartell Project in greater detail.  On July 17, 2013, during this in-person meeting, Defendant made a demand for repayment by Plaintiff of $275,000, claiming that the Bartell Project was over-subsidized.  Defendant gave Plaintiff less than ten days to either repay the $275,000 in full or enter into an acceptable repayment plan.  Plaintiff failed to do either.

As a consequence for failing to abide by Defendant's request for repayment, Defendant placed Plaintiff on its "Problem Projects List," effectively deeming Plaintiff ineligible to participate in the AHP competitive application process for additional housing projects.  Plaintiff allegedly was not given an opportunity to appeal this decision.  Plaintiff subsequently requested

permission to modify its 2007 application to reflect the City's cash donation.  Defendant refused the request.

On September 17, 2013, Plaintiff filed a Complaint in the United States District Court for the District of Kansas requesting that the Court declare, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that: (1) Defendant's demand for repayment violates 12 C.F.R. § 1291, and (2) Plaintiff does not owe Defendant $275,000.  In conjunction with its Answer, Defendant filed a counterclaim seeking recapture of the $275,000 pursuant to 12 C.F.R. § 1291.8(a), Plaintiff's AHP Implementation Plan, and the applications signed by Plaintiff.  On April 10, 2014, Defendant filed a Motion to Dismiss Plaintiff's Complaint in its entirety, citing a lack of subject matter jurisdiction and, in the alternative, failure to state a claim upon which relief can be granted.

## II.      Analysis

### A.      The Arguments

In its motion to dismiss, Defendant argues that Plaintiff's claim for declaratory judgment lacks subject matter jurisdiction because Plaintiff asserts claims against Defendant only under the AHP regulations, found at 12 C.F.R. § 1291.  According to Defendant, neither these regulations, nor the statute authorizing them, 12 U.S.C. § 1430(j), creates any private right of action in favor of Plaintiff or of a class in which Plaintiff is a member and do not provide a judicial remedy to enforce any such right.

In response, Plaintiff argues that, because it seeks a declaratory judgment, it is the nature of *Defendant's* rights and potential claims against Plaintiff that establishes federal subject matter jurisdiction, not whether Plaintiff's declaratory judgment claims against Defendant establish jurisdiction.  To this point, Plaintiff argues that Defendant's right to recapture funds, as

demanded in July 2013, rests squarely in federal law, more specifically in 12 C.F.R. § 1291.8(a). Plaintiff asserts that Defendant made this clear by nature of its counterclaim, which contains the phrases "pursuant to 12 C.F.R. § 1291.8(a)" and "FHLBank has an enforceable right, pursuant to 12 C.F.R. § 1291.8(a)."[1]  Plaintiff further argues that Defendant's right to place Plaintiff on the Problem Projects List similarly rests in the AHP regulations.

In its reply, Defendant concedes that this modified jurisdiction standard applies to Plaintiff's Count II, which seeks a declaratory judgment against Defendant's efforts to recover the $275,000, because this action is *anticipated*, but denies that the standard applies to Plaintiff's Count I, which takes issue with Plaintiff's placement on the Problem Projects List, because that action has already been taken and there is no anticipated future need for any judicial enforcement action.[2]  Therefore, Defendant argues, the general "well-pleaded complaint" rule applies to Plaintiff's Count I, absent any modification, while the modified declaratory judgment jurisdiction standard applies to Count II.  However, Defendant argues that, regardless of which standard is applied, the case still lacks federal subject matter jurisdiction.

**B.      Subject Matter Jurisdiction**

While Plaintiff seeks relief under the Declaratory Judgment Act, the Act itself "does not confer jurisdiction upon federal courts, so the power to issue declaratory judgments must lie in some independent basis of jurisdiction."[3]  Thus, as is the case here, "in the absence of any

---

[1] Plaintiff's Opposition, Doc. 17, p. 4.

[2] Defendant's Reply, Doc. 18, pp. 10-15.

[3] *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996) (internal citations omitted).

pleading that invokes diversity jurisdiction, the relevant basis is federal question jurisdiction under 28 U.S.C. § 1331."[4]

Under § 1331, federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[5]  "To determine whether [a] claim arises under federal law, [courts] examine the 'well[-]pleaded' allegations of the complaint and ignore potential defenses . . . ."[6]  Under the "well-pleaded complaint" rule, "a suit arises under federal law 'only when the plaintiff's statement of his own cause of action shows that it is based' on federal law."[7]  This rule "makes the plaintiff the master of the claim."[8]

The dynamics of the "well-pleaded complaint" rule change, however, in the context of a declaratory judgment action where "the position of the parties is . . . reversed[] [and] the plaintiff asserts a defense to an anticipated action by the declaratory judgment defendant."[9]  In this situation, "[i]t is the character of [the defendant's] action, not [the plaintiff's] defense, that determines whether there is federal question jurisdiction."[10]  Under the "well-pleaded complaint" rule, a defendant cannot thwart federal jurisdiction by simply pleading only state law claims

---

[4] *Id.*

[5] 28 U.S.C. § 1331.

[6] *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003); *accord Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1060 (10th Cir. 2006).

[7] *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996) (quoting *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908)).

[8] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *accord Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1154 (10th Cir. 2004).

[9] *Cardtoons*, 95 F.3d at 964.

[10] *Id.*

when "federal questions [] are essential elements of [its] claim[s]."[11]  However, to invoke federal question jurisdiction, a declaratory judgment plaintiff must still meet its burden and "show that at least one of two recognized exceptions to the well-pleaded complaint rule is applicable—either (1) that [the defendant's] state-law claims are completely preempted, or (2) there is a substantial, disputed federal-law issue necessarily embedded in [the defendant's] state-law claims."[12]

## C.     Application

Defendant urges the Court to apply different standards to Plaintiff's claims for declaratory relief, arguing that Plaintiff's Count I must be judged under the usual "well-pleaded complaint" rule, given the fact that there is no reasonable apprehension of litigation, while Plaintiff's Count II may be judged under the modified jurisdiction standard set forth in *Cardtoons, L.C. v. Major League Baseball Players Ass'n*,[13] since it does anticipate litigation. *Cardtoons* required that suit from a declaratory judgment defendant be, at the very least, reasonably anticipated in order for the modified jurisdiction standard to apply.  However, the Court draws Defendant's attention to *Surefoot LC v. Sure Foot Corporation*,[14]  a Tenth Circuit case that, in following recent United States Supreme Court precedent, held that the "reasonable apprehension of litigation" factor was no longer a viable distinction in claims for declaratory judgment.[15]  This means that, regardless of whether litigation is anticipated from a declaratory judgment defendant, a declaratory judgment plaintiff's claim still must be analyzed under the

---

[11] *Turgeau*, 446 F.3d at 1060-61 (quoting *Schmeling*, 97 F.3d at 1339) (internal quotations omitted).

[12] *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 (10th Cir. 2012).

[13] 95 F.3d 959 (10th Cir. 1996).

[14] 531 F.3d 1236 (10th Cir. 2008).

[15] *Surefoot*, 531 F.3d at 1242 (citing *MedImmune, Inc. v. Genentech Inc.*, 549 U.S. 118, 132 n.11 (2007)).

modified jurisdiction standard.  Therefore, both of Plaintiff's claims will be analyzed under this modified standard.

Plaintiff argues that Defendant's right to recapture funds and place Plaintiff on the Problem Projects List arises from the AHP regulations.  More specifically, Plaintiff argues that Defendant itself *concedes* that its right to seek these remedies stems from the provisions of the AHP regulations, as evidenced by Defendant's use of the regulations in its counterclaim against Plaintiff.  In support, Plaintiff cites to the following language from Defendant's counterclaim:

> *Pursuant to 12 C.F.R. § 1291.8(a)*, FHLBank has a duty to "recover the amount of any AHP subsidies (plus interest, if appropriate) that are not used in compliance with the commitments made in the approved application for AHP subsidy and the requirements of this part, if the misuse is the result of the actions or omissions of the member, the project sponsor, or the project owner," unless one of the exceptions set forth in 12 C.F.R. § 1291.8(b)-(d) applies.
> . . .
>
> FHLBank has an enforceable right, *pursuant to 12 C.F.R. § 1291.8(a)*, its AHP Implementation Plan, and the Applications signed by Homestead as project sponsor in 2003 and 2007, to recapture from Homestead the unnecessary subsidy funds it collected in the amount of $275,000.[16]

In response, Defendant argues that any action it would choose to take against Plaintiff would arise under state law as such an action would seek to enforce the terms of the *contracts* formed between the parties in the AHP applications signed by Plaintiff.

As noted above, to invoke federal question jurisdiction, Plaintiff must meet its burden and show that at least one of two recognized exceptions to the well-pleaded complaint rule is applicable, namely either that Defendant's state law claims are preempted or that there is a "substantial, disputed federal-law issue necessarily embedded" in Defendant's claims.[17]  Neither

---

[16] Defendant's Answer and Counterclaim, Doc. 6, pp. 16-17, 23 (emphasis added).

[17] *Devon*, 693 F.3d at 1203.

party contends that Defendant's claims are preempted.  Plaintiff must therefore show that Defendant's federal claims are embedded in its proffered state law claims.

The United States Supreme Court has recognized "that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."[18]  Under this theory, federal jurisdiction may attach where a "state-law claim *necessarily raise[s]* a stated federal issue, *actually disputed and substantial*, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."[19] This standard ensures that "[t]he presence of a federal issue . . . is not necessarily 'a password opening federal courts to any state action embracing a point of federal law.'"[20]

While Defendant is correct that the AHP regulations do not actually create any rights of action in themselves, it seems impossible that any breach of contract action brought by Defendant would not rely heavily on the interpretation of 12 C.F.R. §§ 1291.8(a) and (g).  For it is only because of these regulations that Defendant has the right to place Plaintiff on the "Problem Projects List" and recapture the potentially over-subsidized funds in the first place.

In support of its argument, Defendant relies on the fact pattern presented in *Devon Energy Production Company, LP v. Mosaic Potash Carlsbad, Inc.*,[21] a Tenth Circuit case in which the court found that the defendant's contemplated state-law causes of action did not present a disputed federal issue that a court must decide.  In *Devon*, the plaintiff oil and gas production company sought declaratory relief against the defendant potash mining company in

---

[18] *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

[19] *Id.* (emphasis added); *accord Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1235-36 (10th Cir. 2006).

[20] *Nicodemus*, 440 F.3d at 1235 (quoting *Grable*, 545 U.S. at 314).

[21] 693 F.3d 1195 (10th Cir. 2012).

anticipation of the defendant filing suit for money damages based on the plaintiff's improper drilling of a well.[22]  The plaintiff's right to drill the well in the first place was governed by the Mineral Leasing Act of 1920 ("MLA") and was managed by the Bureau of Land Management.[23] In its suit, the plaintiff sought, *inter alia*, a declaratory judgment that the only remedies available to the defendant stemmed from the Administrative Procedure Act and the MLA.[24]  The district court dismissed the plaintiff's complaint for lack of subject matter jurisdiction.[25]  On appeal, the Tenth Circuit noted that, in order to establish jurisdiction, it needed to look to the defendant's anticipated claims.[26]  In finding that there was no subject matter jurisdiction based on the "substantial federal issue" theory, the Tenth Circuit noted that while the defendant's claim *may* implicate federal issues, it did not *necessarily* do so.[27]

This is in contrast to two other cases cited by the *Devon* court, namely the Supreme Court case of *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,[28] and the Tenth Circuit case of *Nicodemus v. Union Pacific Corporation*.[29]  In *Grable*, the Internal Revenue Service ("IRS") seized the plaintiff's property to satisfy a tax delinquency.[30]  The IRS

---

[22] *Id*. at 1198.

[23] *Id*.

[24] *Id*. at 1199.

[25] *Id*. at 1200.

[26] *Devon*, 693 F.3d at 1203.

[27] *Id*. at 1209.

[28] 545 U.S. 308 (2005).

[29] 440 F.3d 1227 (10th Cir. 2006).

[30] *Grable*, 545 U.S. at 310.

then sold the property to a third party, providing a quitclaim deed.[31]   Five years later, the plaintiff

brought a quiet-title action against the third party in state court.[32]   The third party removed the

case to federal court, arguing that the quiet-title claim, although an issue of state law, required

the interpretation of the federal tax statute's notice provision.[33]   The Supreme Court held that the

federal tax notice issue was *necessarily* raised because state law required the plaintiff to specify

the facts establishing the superiority of its title, and the only basis for the plaintiff to claim a

superior title was that the IRS failed to give proper notice as required by federal law.[34]

Similarly, in *Nicodemus*, the plaintiffs brought a state law claim for unjust enrichment

based upon the defendant's decision to enter into a licensing agreement with several

telecommunications providers that would permit these providers to use the defendant's right-of-

way over the plaintiff's land to install and maintain fiber-optic cables.[35]   The defendant's right-

of-way, however, was granted pursuant to a federal land-grant statute.[36]   On appeal, the Tenth

Circuit held that the plaintiffs' allegations of unjust enrichment arose solely from misuse of the

defendants' right-of-way, not the alleged trespass, and since the right-of-way was only

established because of a federal land grant statute, the case *necessarily* involved a federal

question.[37]

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.* at 315.

[35] *Nicodemus*, 440 F.3d at 1233.

[36] *Id.*

[37] *Id.* at 1236-37.

The case at hand seems more akin to the situations presented in *Grable* and *Nicodemus* rather than *Devon*.  Here, the only authority Defendant has for recapturing the $275,000 is found in the AHP regulations.  Under 12 C.F.R. § 1291.8(a), "[a] Bank shall recover the amount of any AHP subsidies (plus interest, if appropriate) that are not used in compliance with the commitments made in the approved application for AHP subsidy and the requirements of this part, if the misuse is the result of the actions or omissions of the . . . project sponsor . . . ."[38]  Just as in *Grable* and *Nicodemus*, Defendant's potential state-law claims for breach of contract *necessarily* involve construing the remedial provisions of a federal regulation governing a federal program.

Likewise, the only authority Defendant has for placing Plaintiff on the "Problem Projects List" stems from 12 C.F.R. § 1291.8(g).  Under this regulation,

> *At a Bank's initiative.*  A Bank may suspend or debar a member, project sponsor, or project owner from participation in the Program if such party shows a pattern of noncompliance, or engages in a single instance of flagrant noncompliance, with the terms of an approved application for AHP subsidy or the requirements of this part.[39]

Thus, any suit involving Plaintiff's placement on this List necessarily involves construing the remedial provisions of a federal regulation governing a federal program.

Therefore, because of the nature of Defendant's potential state-law claims against Plaintiff, the Court finds that it does indeed have federal subject matter jurisdiction over Plaintiff's claims for declaratory judgment.  As such, Defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), is denied.

---

[38] 12 C.F.R. § 1291.8(a).

[39] 12 C.F.R. § 1291.8(g) (emphasis added).

D.      **Failure to State a Claim**

        In the alternative, Defendant argues that Plaintiff's claims for declaratory judgment also fail to state a claim for which relief may be granted because neither the AHP regulations nor the authorizing AHP statute creates a private right of action.  Defendant relies on and sets forth the same argument in support of this defense as it did for its motion to dismiss for lack of subject matter jurisdiction.  Because the Court has already determined that Plaintiff's claims must be analyzed using the standard of review for declaratory judgment claims, which granted subject matter jurisdiction, it would not make sense for this Court to grant Defendant's motion to dismiss for failure to state a claim on those same erroneous grounds.  As such, Defendant's motion to dismiss, pursuant to Rule 12(b)(6), for failure to state a claim, is denied.

        **IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 15) is hereby **DENIED**.

        **IT IS SO ORDERED**.

        Dated this 5th day of August, 2014.



                                                    *Eric F. Melgren*

                                                    ERIC F. MELGREN
                                                    UNITED STATES DISTRICT JUDGE

-13-